**SCHERN RICHARDSON FINTER**
Michael A. Schern #022996
Michael Robert Somers #017501
1640 S. Stapley Drive, Suite 132
Mesa, Arizona 85204
Email: courtdocs@srflawfirm.com
Tel: (480) 632-1929
*Attorneys for Plaintiff*

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **In Re:** <br><br> **RYAN DANIEL JONES,** <br><br> Debtor. | **Chapter 13** <br><br> **Case No. 2:25-bk-11315-PS** |
| **CHASE WARDROP, an individual,** <br><br> **Plaintiff,** <br><br> v. <br><br> **RYAN DANIEL JONES,** <br><br> **Defendant.** | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A) AND 523(a)(6)** |

COMES NOW Chase Wardrop (the "Plaintiff"), by and through the undersigned counsel, and for his Complaint to Determine Dischargeability Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6) against Ryan Daniel Jones, alleges as follows:

**PARTIES**

1. Plaintiff Chase Wardrop is an individual residing in Maricopa Count, Arizona and is a creditor to the Defendant.

2. Ryan Daniel Jones ("Jones" or "Defendant") is the debtor in the above-refenced bankruptcy proceeding and is a resident of Maricopa County, Arizona.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the parties and the subject matter of this action under 28 U.S.C. §§ 151, 157.

4. This action constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

5. This action constitutes an adversary proceeding under Rule 7001(6) of the Federal Rules of Bankruptcy Procedure.

6. Venue rests properly in this District under 28 U.S.C. § 1409.

**ALLEGATIONS COMMON TO ALL COUNTS**

7. The Defendant filed a voluntary petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, on November 24, 2025 (the "Petition Date").

8. Defendant is a self-described real estate investor and holds a Real Estate Salesperson license issued by the Arizona Department of Real Estate.

9. On or about April 24, 2023, Defendant met with Plaintiff and presented Plaintiff with what he described as various opportunities to invest real estate deals curated by Defendant.

10. Defendant told Plaintiff that because he was a licensed real estate professional, he regularly became aware of opportunities to purchase residential properties which, with minor improvement or remodel, could be held as rental income properties or resold for a substantial profit. Defendant told Plaintiff that to take advantage of these lucrative opportunities, he needed an investor like Plaintiff to provide a portion of the funding needed to purchase the properties as they became available and to pay for needed improvements and remodeling. Defendant told Plaintiff that in exchange for Plaintiff providing financial funding to acquire and improve the properties, he and Plaintiff would share equally all profits resulting from renting or selling the subject property.

11. To further induce Plaintiff to send him money to purchase and improve the properties he promised to find, Defendant assured Plaintiff that the funds Plaintiff invested in the properties were secure because Plaintiff would be named together with Defendant or Defendant's sole

member limited liability company Jones Realty, LLC on the deed for any of the properties purchased or to be improved using Plaintiff's money.

12. Relying on the promises and representations made to him by Defendant, and placing an increased measure of trust in Defendant's promises and representations because Defendant was a licensed real estate professional, Plaintiff agreed to accept Defendant's offer to invest in the opportunities Defendant would present to Plaintiff.

13. On or about May 4, 2023, Defendant told Plaintiff that he had a contract to purchase a condominium located at 4750 N. Central Ave., #2A, Phoenix, Arizona ("Central Condo").

14. On or about May 4, 2023, Defendant told Plaintiff that he had a contract to purchase a condominium located at 7575 E. Indian Bend Rd., #2114, Scottsdale, Arizona ("Indian Bend Condo").

15. Defendant told Plaintiff that he needed Plaintiff to send him $52,000.00 to fund the acquisition and remodel of the Central Condo and the Indian Bend Condo.

16. Defendant promised Plaintiff that he would purchase the Central Condo and the Indian Bend Condo in a manner that the deeds thereto would reflect the owners thereof as Plaintiff and Defendant or Plaintiff and Defendant's sole member limited liability company Jones Realty, LLC.

17. Defendant represented to Plaintiff the combined net rental income Plaintiff would receive from the Central Condo and the Indian Bend Condo would be $1,000 per month.

18. On or about May 9, 2023, Plaintiff sent Defendant $52,000.00 based on Defendant's representation that the funds were for the purchase the Central Condo and the Indian Bend Condo, that Plaintiff would have a fee interest in the Central Condo and the Indian Bend Condo reflected in a deed, and that profits realized from the properties' rents or disposition would be split equally between Plaintiff and Defendant.

19. On or about May 9, 20223, Defendant received $52,000.00 from Plaintiff.

20. On or about May 9, 2023, Defendant represented to Plaintiff that he had opened escrow for the purchase of the Central Condo and the Indian Bend Condo.

21. On or about May 31, 2023, Defendant represented to Plaintiff that he purchased the Central Condo and the Indian Bend Condo and that the deeds for each of the properties reflected Plaintiff having a fee interest as Defendant had promised.

22. On or about June 26, 2023, Defendant told Plaintiff that he had learned of a residential property located at 2231 S. Evergreen, Tempe, Arizona he believed could be purchased, improved, and sold for a substantial profit (the "Evergreen Property"). Defendant referred to the Evergreen Property as a "flip" property.

23. Defendant told Plaintiff that just like the Central Condo and the Indian Bend Condo properties, in exchange for Plaintiff providing financial funding to acquire and improve the "flip" property, he and Plaintiff would share equally in all the profits resulting from renting or selling the Evergreen Property.

24. To further induce Plaintiff to send him money to purchase and improve the "flip" property, Defendant assured Plaintiff that the funds Plaintiff invested would be secure because Plaintiff would be named together with Defendant or limited liability company on the property's deed.

25. Defendant told Plaintiff that he needed Plaintiff to send him $68,500.00 to fund the acquisition and remodel of the Evergreen Property.

26. On or about June 26, 2023, Plaintiff sent Defendant $68,500.00 based on Defendant's representation that the funds were for the purchase and remodel the Evergreen Property, that Plaintiff would have a fee interest in the Evergreen Property reflected in a deed, and that profits realized from the property's rents or disposition would be split equally between Defendant and Plaintiff.

27. On or about June 26, 20223, Defendant received $68,500.00 from Plaintiff.

28. On or about July 1, 2023, Defendant represented to Plaintiff that he had opened escrow for the purchase of the "flip" property.

29. Defendant represented to Plaintiff that he purchased the Evergreen Property and that the deed for the Evergreen Property reflected Plaintiff having a fee interest as Defendant had promised.

30. During the months that followed, Plaintiff made inquiries regarding the status of the Evergreen Property Defendant told Plaintiff he had purchased and was remodeling using Plaintiff's money.

31. On October 1, 2023, in response to Plaintiffs' inquiries, Defendant told Plaintiff that the Evergreen Property was about ready to be sold, and that "we are almost to the finish line" and that the property would be sold on October 6, 2023.

32. Defendant told Plaintiff on October 1, 2023, that the sale of the Evergreen Property would net a profit of $80,000.00 which would be split equally between Defendant and Plaintiff.

33. Defendant then stopped communicating with Plaintiff until October 25, 2023, claiming he was "off grid" on an elk hunt and unable to communicate.

34. On October 25, 2023, Defendant told Plaintiff that the sale of the Evergreen Property had closed and that "we both profited 40K! Not as much as I'd like but it was a solid investment."

35. On October 25, 2023, Defendant told Plaintiff that the Central Condo and Indian Bend Condo he had purchased using Plaintiff's money "had been cash flowing for several months" and that he had been "putting [Plaintiff's] money aside." Defendant instructed Plaintiff to "[p]lease send me your new mailing address and I'll get you settled up."

36. On October 25, 2023, Defendant told Plaintiff "I have 94k of your money to roll over to the next project" and advised Plaintiff, "[d]epending on where you are with investing, I would probably split your money between 2 properties."

37. Plaintiff immediately informed Defendant of his mailing address, expecting that Defendant would send him his money as he promised and led Plaintiff to believe.

38. Months passed and Defendant never sent Plaintiff any money, contrary to what he had promised.

39. In January 2024, Plaintiff spoke to Defendant, who assured him that he would send Plaintiff his money.

40. On January 20, 2024, Defendant told Plaintiff that he was prepared to send Plaintiff his money that very week. Per Defendant's request, Plaintiff provided Defendant with wiring instructions for Plaintiff's bank account having been led to believe that Defendant was going to send him his money. At the conclusion of their phone call on January 20, 2024, Plaintiff was so convinced that Defendant was finally going to send him his money that he sent a text message to Defendant stating "[a]appreciate the call. Thanks for sending the money this week . . .." In response to Plaintiff's text message, Defendant sent a text message stating "You got it! No problem."

41. On January 29, 2024, Plaintiff sent Defendant a text message inquiring as to the status of the wire Defendant promised to send.

42. On February 2, 2024, Defendant responded to Plaintiff's January 29, 2024 inquiry claiming "[h]ey Bud! I haven't forgotten about you! My dad was rushed to the hospital Monday and still there so I've been taking care of my mom and working so I haven't had time to get to the bank to do that wire."

43. Defendant never sent Plaintiff his money. Each time Plaintiff asked Defendant about the status of his funds, Defendant gave Plaintiff an excuse for not being able to send the money.

44. Eventually, Defendant stopped responding to Plaintiff's requests.

45. Plaintiff discovered that Defendant had been lying to him the entire time.

46. Defendants never purchased the Central Condo.

47. Defendants never purchased the Indian Bend condo.

48. On or about December 21, 2023, Defendant caused and directed Defendant Jones Realty, LLC to purchase the Evergreen Property.

49. Once Defendant purchased the Evergreen Property through his company Jones Realty, he began performing remodel and renovation work thereon in an effort to improve the value thereof with the objective of selling it to make a profit.

50. Defendants used some or all of the $120,500 Defendant received from Plaintiff to pay for a portion of the Evergreen Property purchase price.

51. Defendants used some or all of the $120,500 Defendant received from Plaintiff to pay for a portion or all of the costs to remodel and improve the Evergreen Property.

52. On or about April 12, 2024, Defendant caused and directed Defendant Jones Realty, LLC to sell the Evergreen Property for the sales price of $615,000.

53. Defendants realized a gross profit of $280,000 from the purchase and sale of the Evergreen Property.

54. On or about April 23, 2024, Defendant caused and directed Defendant Jones Realty, LLC to purchase the residential real property located at 2201 E. Shea Boulevard, Phoenix, Arizona for the purchase price of $949,000 (the "Shea Property").

55. No less than one half of the profits Defendants realized from the purchase and sale of the Evergreen Property belong to Plaintiff.

56. Defendant used the profits he realized from the purchase and sale of the Evergreen Property he acquired and improved using Plaintiff's money to purchase and or improve the Shea Property.

57. Plaintiff made repeated demands to Defendant for the return of his money. Those demands were ignored.

58. Realizing that Defendant had no intention of returning Plaintiff's money, on June 20, 2024 Plaintiff filed a lawsuit against Defendant in the Superior Court of the State of Arizona in Maricopa County, Case Number CV2024-016029 (the "Civil Lawsuit").

59. The Civil Lawsuit alleged specific causes of action against Defendant for 1) Breach of Contract; 2) Unjust Enrichment; 3) Conversion; 4) Fraud; 5) Constructive Trust; and 6) Piercing of Corporate Veil.

60. On July 30, 2024, Defendant agreed to a stipulated judgment against him and in favor of Plaintiff and on August 1, 2024 a formal judgment was signed by the court and entered against Defendant ("Stipulated Judgment").

61. Pursuant to the Stipulated Judgment, Defendant was ordered to pay Plaintiff the sum of $186,000, with interest thereon at the rate of 10% per annum until paid in full, plus attorneys fees and costs should collection efforts become necessary.

62. Defendant agreed to make payments to Plaintiff to pay off the judgment, but those payments were not made.

63. On April 22, 2025, and again on July 22, 2025, the Stipulated Judgment against Defendant was recorded in the Records of Maricopa County at instruments 2025-0224653 and 2025-0420839, respectively.

64. The Stipulated Judgment agreed to by Defendant and entered by the Superior Court arises out of Defendant's fraudulent conduct in which he ultimately converted Plaintiff's money into his own and for his own benefit. The Stipulated Judgment is not dischargeable in Defendant's bankruptcy.

## COUNT I: NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

65. Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 65 of this Complaint.

66. As set forth above and herein, Defendant represented to Plaintiff that the money he was investing with Defendant and be and in fact was used for specific real estate investments, that his money was secure because Plaintiff would be named on the deed for the real property, and that Plaintiff would receive a return of all of his investment before any of the profits would be split with Defendant.

67. Plaintiff, had no reason to doubt the Defendant's representations.

68. As set forth above, Defendant's representations to Plaintiff were false.

69. As set forth above, Defendant's conduct constitutes fraud.

70. The money Defendant obtained from Plaintiff was obtained by false representations and fraudulent conduct.

71. Defendant's false representations and fraudulent conduct proximately caused Plaintiff damage in inducing Plaintiff to give his money to Defendant.

72. Defendant's debt to the Plaintiff therefore should be held non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

## COUNT II: NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6)

73. Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 72 of this Complaint

74. As set forth above, Defendant converted Plaintiff's property by taking possession and depriving Plaintiff of his money and the real property he was entitled to receive title to and thereby caused Plaintiff economic injury.

75. As set forth above, Defendant willfully and maliciously injured Plaintiff though his conversion, fraudulent conduct, and false representations in that Defendant knew that he was not using Plaintiff's money as promised but told Plaintiff otherwise; Defendant knew that Plaintiff was not named on a property deed as promised but told Plaintiff he was so named in order to make him feel more secure; Defendant knew he was not splitting the profits made from the use of Plaintiff's money as promised but told Plaintiff there were no profits.

76. Defendant's debt to the Plaintiff therefore should be held non-dischargeable under 11 U.S.C. § 523(a)(6).

## RELIEFR REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Find that the amount of the Stipulated Judgment against Ryan Danial Jones in the Civil Lawsuit in the principal amount of $186,000.00, with interest thereon at the rate of 10% per annum from the date the Stipulated Judgment was entered until paid in full is valid and nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6);

B. Enter judgment against Ryan Danial Jones in the amount of $186,000.00, plus applicable interest in accordance with 28 U.S.C. § 1961;

C. Enter judgment against Ryan Danial Jones in the amount of $10,000.00

D. Grant Plaintiff such other and further relief as this Court deems just and proper.

DATED this 28th day of January, 2026.

SCHERN RICHARDSON FINTER, PLC

By _____
Michael S. Schern
Michael R. Somers
1640 S. Stapley Dr., Ste. 132
Mesa, AZ 85204
Attorneys for Plaintiff